GEORGE S. VAN SCHAICK, Superintendent of Insurance of the State of New York, as Liquidator of the LEXINGTON SURETY AND INDEMNITY CORPORATION, Plaintiff, *v.* THE BANK OF YORK-TOWN, Defendant.

Supreme Court, New York County, January 30, 1934.

*Alfred C. Bennett* [*Abraham J. Halprin* of counsel], for the plaintiff.

*Mackey, Herrlich & Breen,* for the defendant.

McCook, J. The facts are substantially undisputed. This action relates to two notes, one for $5,000, the other $25,000. On or about the 1st day of December, 1931, the defendant bank arranged to give one Zimels a loan in the sum of $5,000. The note was executed by Zimels, was due April 4, 1932, and a deposit was made in the bank. This borrower gave as collateral security a bond furnished by the Lexington Surety and Indemnity Company, which bond was protected by a time deposit made by that company in the defendant bank. The bond is brief and reads as follows:

" *Know all men by these presents,* that we, Bernhard Zimels, residing at 830 East 163rd Street, Borough of Bronx, City of New York, hereinafter called the Principal, and the Lexington Surety and Indemnity Company, having an office at No. 123 William Street, New York City, hereinafter called the Surety, as Surety, are held and firmly bound unto the Bank of Yorktown of 8th Avenue and 38th Street, New York City, hereinafter called the Obligee, in the penal sum of Five Thousand no/100 ($5000) Dollars, which sum plus interest and costs, is hereby agreed to be the maximum liability hereunder, lawful money of the United States of America, well and truly to be paid, our successors and assigns, jointly and severally, firmly by these presents.

" Dated, this 4th day of August, 1932.

" Whereas, the above mentioned Principal has made, executed and delivered to said Obligee, its promissory note in the sum of Five Thousand ($5,000) Dollars. Now, Therefore, the Condition of this Obligation is Such, that if the Principal shall pay or cause to be paid the full amount of said note at or before its maturity, or shall well and truly pay any renewal or renewals which the said Obligee may grant on said note, said renewal or renewals however, not to extend beyond one (1) year from the date of this bond, then this obligation shall be void; otherwise to remain in full force and virtue; it being agreed that in the event of a default on said note

by the Principal, the Obligee will have the right to enforce payment by the Surety without first proceeding against the principal or any other person, without redress to any court of law or equity on the part of the principal or surety.

"BERNHARD ZIMELS,
"*Principal.*

"LEXINGTON SURETY AND INDEMNITY COMPANY,
"By H. ROBERT BURNEY,
"*Vice-President.*

"Countersigned by BENJAMIN SHEPARD,
"*Treasurer.*"

[Acknowledgment.]

Zimels' note was renewed on the due date, the other arrangements remaining the same. On August 4, 1932, a change in the note was made and Zimels signed a collateral note, payable on demand, referring to the Lexington Surety and Indemnity Company bond. On the same date defendant sent a letter to Zimels, writing, "We hereby make a demand upon you for payment of loan of $5,000 made to you today." Nothing further took place until the 30th day of December, 1932, when the bank charged off mutual credits and debits on its books between itself and the Lexington Surety and Indemnity Company and applied part of the credit of the Lexington Surety and Indemnity Company against Zimels' note.

On the 30th day of December, 1931, the defendant bank loaned one Fannie Eisenstein $15,000 secured by a bond signed by her and the Lexington Surety and Indemnity Company. The Lexington Surety and Indemnity Company made a time deposit with the defendant bank. A letter similar to the one sent to Zimels was sent to Eisenstein. The loan was paid by charging it against the time deposit of the Lexington Surety and Indemnity Company. There is no question with respect to the payment of this loan. Another loan in the sum of $25,000 was made in the same manner and upon the same terms to the said Eisenstein on January 11, 1932. The second loan was charged against the time deposit of the Lexington Surety and Indemnity Company in a manner similar to the charge made against the same company by reason of Zimel's loan.

The plaintiff in this case is the Superintendent of Insurance as liquidator of the Lexington Surety and Indemnity Company. At the close of the trial two special questions were submitted to the jury:

"1. Did Mr. Greber inform Mr. Engel of the injunction on December 30, 1932, at or about 5:10 P. M.?

" 2. Did Mr. Engel charge off the loans in question on December 30, 1932, at or about 4 P. M.? " [Mr. Greber was in the employ of the Superintendent of Insurance and Mr. Engel in the employ of the defendant bank.]

The first question was answered " Yes " and the second " No."

Despite the adverse finding of the jury the defendant contends that the plaintiff cannot recover as a matter of law, since the defendant was entitled to set off the amount due to it by the Lexington Surety and Indemnity Company against the amount which it owed to that company in its deposit account. The defendant relies strongly upon the case of *Van Schaick* v. *Pennsylvania Exchange Bank* (236 App. Div. 453) in which there was no dispute as to the essential facts, and the problem was presented as a matter of pleading. In that case the promissory note was due on January 12, 1931. The order of liquidation was made December 31, 1930, and fixed the 15th day of January, 1931, as the date for the determination of the rights and liabilities of the company and of its creditors. On January 12, 1931, the note was presented, payment refused, and due and timely notice given to the casualty company and to the plaintiff. These facts were set up as a defense. The court reversed the order striking out the defense and thus held that on the 12th day of January, 1931, the claim had become vested. It further said that the fact that the making of a demand on January 5, 1931, by the plaintiff on the defendant for payment of the amount of the deposit was immaterial, since it " merely gave rise to a cause of action in favor of the plaintiff to recover on the debt existing because of the deposit."

Were there a demand in the present case the *Pennsylvania Exchange Bank* decision would clearly be authority determinative of the present controversy. The plaintiff has recognized the difference, due to the absence of a demand, saying in his brief: " The defendant has urged, as supporting its contention, the case of *Van Schaick* against the *Pennsylvania Exchange Bank*, which appeal was argued by counsel for the plaintiff herein. In that case the sole point raised was as to whether or not the claim of the bank had matured before the fixation date for claims. There, also, the bank had seized the deposit. In that case, however, there was no claim made that the bank had failed to make a demand on the surety, which had been done. In view of that fact the sole question considered by the court was whether the money could be seized by the bank by reason of the fact that the loan matured on the 9th, and the fixation date was on the 15th of the month. There the court held that in view of the fact that the fixation date was the 15th of the month and the note had matured on the 9th, and

demand had been made on the 9th, that the claim had matured and that the defendant there was entitled to recover."

The plaintiff relies strongly upon the action of *Matter of Equitable Casualty & Surety Co. (World Exchange Bank,* 243 App. Div. 506), where the order of the Supreme Court confirming the report of the referee in his disallowance of the claim was affirmed by the Appellate Division without opinion by Special Term or on appeal.

A bond had been furnished as collateral security for a loan in the sum of $30,000. The principal had executed his demand note in that sum. The bond contained the following provisions: " Now, therefore, the condition of the foregoing obligation is such that if the said Julius Martinson [the principal] shall well and truly pay the said note as and when demand is made, * * * and the surety herein * * * does hereby agree and undertake to pay said note on the demand date in the event that same has not been paid by the maker of said note, and waive notice of protest and notice of non-payment."

On the 19th of January, 1931, demand was made for payment and the note protested for non-payment. On the 22d of January, 1931, proof of claim was filed by the defendant with the Superintendent of Insurance. An amended proof of claim was filed on May 17, 1932. The claimant contended that no demand for payment was necessary because the note was a demand note. At the same time it urged that the notice of protest of January 19, 1931, was a demand for payment. The Superintendent of Insurance argued that the claim was contingent. The referee said in his opinion: " The execution and delivery of these instruments and the practical construction placed upon all of them by the parties thereto, including the demand for payment on January 19th, 1931, in my opinion do not support the contention of claimant that prior to January 15th, 1931, an absolute liability was fixed on the Equitable Casualty and Surety Company on the aforesaid bond.

" The Equitable Casualty and Surety Company agreed to pay the aforesaid note on the demand date only in the event that it had not been paid by the maker. It did not as it might have done, if required, agree to pay the note on its due date.

" No proof was submitted before me showing that any demand for payment had been made before January 19th, 1931.

" No action in my opinion could be brought against the Equitable Casualty and Surety Company before the claim was due. The claim was not due as against the Equitable Casualty and Surety Company until demand was made. Demand, according to the proofs before me, was not made until January 19th, 1931, four days after the fixation date named in the order of liquidation."

The plaintiff in our case has submitted a brief in which he has presented as the first part of his argument the same arguments used by the respondent before the Appellate Division in the *World Exchange Bank* case, in language almost identical and citations exactly the same.

The *Pennsylvania Exchange Bank* and *World Exchange Bank* cases are, in my opinion, both distinguishable. In the former, cited by the defendant, a demand for payment was concededly made by the surety company. In the latter, cited by the plaintiff, the bond concededly referred to a demand. In our case the bond is silent and, as before remarked, no demand was made.

The Lexington Surety and Indemnity Company in its bond denominates itself " surety." At common law the obligation of a surety was *strictissimi juris*, and any question arising under the instrument was construed in the surety's favor. If the instrument was silent on any subject, neither duty nor liability arose on his part. Professional sureties generally, in corporate forms of the present day, have not been able to avail themselves of this rule according to recent decisions. (Stearns Law of Suretyship [4th ed.], pp. 401 *et seq.*) A construction similar to the one placed upon the interpretation of insurance company policies is now applied to surety company policies, with a tendency towards construing them (in the case of doubt or ambiguity) against their author. (Arant Handbook of the Law of Suretyship and Guaranty, p. 311.)

It is unnecessary to discuss the differences between a surety and a guarantor, because our policy is one not of contingent, but of absolute liability. The document was executed by principal and surety at the same time. The obligation of the latter is that " if the principal shall pay * * * the full amount of said note * * * this obligation shall be void; otherwise to remain in full force and virtue." It is an absolute promise to pay.

The law is established that no demand upon the maker or principal is necessary under the Negotiable Instruments Law whether the demand note bears interest or not. (See *American Trust Co.* v. *Manley*, 195 App. Div. 811.) In the early case of *Brown* v. *Curtiss* (2 N. Y. 225) one who writes on the back of a note, " I guaranty the payment of the within " and signs his name is held a guarantor and not an indorser. Judge BRONSON there remarked, with characteristic pungency: " It is said on the one side, that the defendant is the maker of a promissory note, and liable as such; and on the other side, that he is an endorser, and has been discharged for the want of demand and notice. And strange as it may seem, there are cases in the books which go to uphold both of these positions. But they are both wrong. The defendant is

neither maker nor endorser of a promissory note. On the contrary, he has in very plain terms made a contract of a different kind from either of these — one well known to the law; and by that contract he must either stand or fall. He has guarantied the payment of G. F. Brown's note; and we have no right to turn that contract into one of a different kind. * * * But the courts can have no right, under color of construing the agreement, to say that it means something else from what the language of the instrument plainly imports. I have contended earnestly, though not always with success, for this doctrine. * * *

" The undertaking of the defendant was not conditional, like that of an endorser; nor was it upon any condition whatever. It was an absolute agreement that the note should be paid by the maker at maturity. When the maker failed to pay, the defendant's contract was broken, and the plaintiff had a complete right of action against him. It was no part of the agreement that the plaintiff should give notice of the non-payment; nor that he should sue the maker, or use any diligence to get the money from him."

This case was cited in *Westchester Mortgage Co.* v. *McIntire, Inc.* (168 App. Div. 139, 141), and *First Nat. Bank* v. *Jones* (219 N. Y. 312, at p. 315): " If the agreement was an unconditional guaranty of payment then the plaintiff's right of action in the guaranty was complete when the makers of the note failed to pay according to the terms thereof." [Citations.] (See, also, *Deck* v. *Works*, 18 Hun, 266; *Douglass* v. *Howland*, 24 Wend. 35; *Cass* v. *Shewman*, 61 Hun, 472.)

If the notes in question bore certain due dates and were not payable on demand, it is clear from the foregoing authorities that no demand of any sort would be necessary in order to hold the surety. If the due dates were prior to the date set in the liquidation orders the surety would be liable, since the notes would have matured and the claims vested.

Does the fact that the notes were payable on demand change the situation? I think not. Under the Negotiable Instruments Law, no demand is necessary to charge the maker (§ 130). But even were some demand required it was made by letter sent by the defendant. (See *Wheeler* v. *Warner*, 47 N. Y. 519.) Though the courts of some States hold that the creditor must give notice if the extent of the principal's obligation is indefinite either as to amount to be paid or as to time for performance, such is not the rule in the majority, nor is it the rule in our State. (See Arant Handbook of the Law on Suretyship and Guaranty, p. 309.)

We reach the conclusion that the defendant could have sued the Lexington Surety and Indemnity Company on its bonds. This

would have resulted in a judgment and execution could have been levied against the time deposit. The reversal of the parties and the suit by the Superintendent as plaintiff does not alter matters, and a short cut taken by the bank does not give him any right of action.

Verdict directed for defendants.